# United States Court of Appeals
## For the First Circuit

No. 03-1634

UNITED STATES,

Appellee,

v.

ENRIQUE MOTA-SANTANA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin and Stahl, Senior Circuit Judges.

H. Manuel Hernandez on brief for appellant.
H. S. Garcia, United States Attorney, Sonia I. Torres-Pabon,
Assistant United States Attorney, and Thomas F. Klumper, Assistant
United States Attorney, on brief for appellee.

December 8, 2004

**COFFIN, <u>Senior Circuit Judge</u>**.  The issue raised in this appeal is whether the district court committed reversible error in its inquiry into defendant-appellant's complaints against his retained counsel and its refusal to appoint new counsel.

Defendant was indicted for conspiring with two co-defendants to import cocaine and heroin into the United States in violation of 21 U.S.C. § 963 over a two year period, beginning in late 2000. Defendant's role was to recruit and secure financing for drug couriers who would travel in Caribbean cruise ships and transport drugs from Curacao in the Netherlands Antilles to St. Thomas, U.S. Virgin Islands.  Over the period of the conspiracy, defendant was alleged to have recruited at least ten couples.

Defendant was indicted on July 31, 2002.  He first refused a court appointed counsel, then employed counsel retained by his family, and finally substituted new retained counsel, Raymond Sanchez-Maceira, at the end of August.  After a plea agreement had been entered into in December, defendant expressed dissatisfaction with Sanchez.  Both defendant and Sanchez requested that Sanchez be allowed to withdraw and that new counsel be appointed.  The court refused both requests.  We affirm.

The Facts

The history of the relationship between defendant and Sanchez is the following:

On December 4, 2002, Sanchez and defendant reviewed a draft plea agreement, which the government had offered, the offer to expire on the following day. It provided for a plea of guilty to Count One, defendant to be held accountable for importing at least five kilograms but less than fifteen kilograms of cocaine. It also reviewed the penalties for the charged crime, the maximum being life imprisonment and the minimum being ten years. The government would recommend a sentence of one hundred twenty months and a dismissal of a second count charging possession with intent to distribute. The agreement recited that the defendant was satisfied with counsel, that he was familiar with the rights he was surrendering, that his agreement was voluntary, and that he had reviewed every part of the agreement with his attorney and understood it. As a result of this offer for a plea agreement, defendant submitted a motion for change of plea on December 6.

On December 12, Attorney Sanchez filed a request to withdraw as counsel, stating that he had visited defendant several times at the Metropolitan Detention Center (MDC) in Guaynabo, discussing the sentence maximum and minimum for the offense charged and the results of discovery from the government; that on December 4 he had given defendant his appraisal of the plea agreement offered by the government, and that, in accordance with defendant's instructions, he promptly filed a motion to change the plea; that on December 10 Sanchez had once again visited the MDC to "resolve any difference

-3-

between us," but defendant refused to see him; and that on the following day defendant telephoned Sanchez, asking him to withdraw from the case since he had failed to get a "better" plea offer. The motion concluded that "a complete breakdown in communication" had occurred and requested, in addition to consent to withdraw, an appropriate inquiry.

Shortly thereafter, on December 16, the court held a change of plea hearing. It began with Sanchez's pointing out his motion to withdraw and defendant's unhappiness with the terms of the plea agreement. The court addressed the defendant, saying that this was not a sufficient ground for allowing Sanchez to withdraw and adding that, considering the amount of drugs involved, it could see no better deal than the mandatory minimum of one hundred twenty months. In response to the court's query: "Are we going to have the plea or are we going to trial?" defendant disavowed wanting to go to trial. Sanchez intervened at this point, urging that it would be a shame for defendant to make a straight plea in light of the plea agreement. The court allowed a recess for Sanchez and defendant to talk.

On resumption of the hearing, defendant told the court he had had enough time to consult with his attorney, that he wished to enter a plea of guilty to Count One, and that he was satisfied with his services. The court then conducted a careful examination of defendant's appreciation of rights waived under the plea agreement

and the range of possibilities in sentencing. Appellant repeated that he was satisfied and that his attorney had rendered effective legal assistance. The court concluded that he was acting "voluntarily and with full knowledge of the consequences."

Finally, in January of 2003, defendant filed a pro se motion to appoint counsel, stating that his family could no longer afford the fees Sanchez was charging, that on December 30 and 31 he had tried unsuccessfully to call Sanchez, that Sanchez had "deceived" him into signing a plea agreement that was not fully explained to him, and that he had lost all confidence in Sanchez.

The court ordered a response from Sanchez. On February 14, Sanchez filed his response, which stated that his fee had been fully paid and that no further fees were being charged; that he had paid several visits to defendant; that he had requested and received considerable discovery; that he had filed a motion to suppress a tape and had participated in a hearing to determine its acceptability; that plea negotiations had been complicated by three factors - defendant's role, drug amounts, and another case in which supervised release might be jeopardized; and that defendant was well aware of the plea provisions and had not been deceived. Sanchez added at the end of his response that the breakdown in communication between him and his client threatened the latter's Sixth Amendment rights and that new counsel should be appointed.

On February 26, the court endorsed an order denying the motion to appoint counsel.

On April 3, 2003, the court held a sentencing hearing. Defendant was present and had no changes to request in the Pre-sentence Report. Sanchez urged that special consideration be given defendant, since he was vulnerable as a deportable alien. The government argued that there was no basis for downward departure. The court asked defendant: "[I]s there anything you would like to state to the court at this time?" The defendant declined the invitation. The court then recapitulated the steps leading to the final sentence of one hundred twenty months it felt compelled by the facts to impose.

## Analysis

Appellant poses the issue in stark terms: "Whether the district court committed error when it failed to determine if a conflict of interest existed between the appellant and his attorney after appellant asked his trial attorney to withdraw and requested that the court appoint new counsel."

Appellant argues in his brief that he had accused counsel of failing properly to represent him and that counsel was forced to defend his good name and "attack his own client and savage his client's credibility." Moreover, he asserts that there had been a complete breakdown in communication and that this situation indicated an obvious conflict of interest, which, under Cuyler v.

Sullivan, 446 U.S. 335, 346 (1980), and other cases, requires an inquiry to resolve the issue. The district court held no such inquiry and proceeded to hold the change of plea hearing. This was, appellant concludes, a per se denial of appellant's Sixth Amendment rights and requires reversal without any obligation to show prejudice. Cf. Holloway v. Arkansas, 435 U.S. 475, 488 (1978) ("[W]henever a trial court improperly requires joint representation over timely objection [to a conflict of interest] reversal is automatic.").

This proposition, examined closely, is a bold, innovative, and, finally, untenable claim. That is, the alleged conflict consists of a court-ordered response by an attorney to a client's conclusory expressions of dissatisfaction, in which the lawyer detailed his services to his client and joined in the request to allow withdrawal and to appoint new counsel. The response does not begin to rise to the levels of "attack" or "savaging." It was a not uncommon type of disagreement between client and counsel, exacerbated by a retrospective regret that a more favorable plea agreement could not somehow have been made.

Appellant seeks to stretch the concept of "conflict of interests" to cover the vast terrain of possible conflicting opinions of client and counsel. The existing body of law subjecting conflict of interests issues to the most scrupulous attention is based on the principle that a person cannot faithfully serve two

masters with conflicting interests.  All the case law we are acquainted with deals with multiple representation situations, with situations involving two or more clients of a lawyer.  See, e.g., Wheat v. United States, 486 U.S. 153, 160 (1988); Sullivan, 446 U.S. at 346; Halloway, 435 U.S. at 483-84.  Defendant seeks to support his claim by citing two First Circuit cases, United States  v. Nelson-Rodriguez, 319 F.3d 12 (2003) and United States v. Hernandez-Lebron, 23 F.3d 600 (1994), but both cases involved multiple or joint representation of more than one client by a lawyer.

In Mickens v. Taylor, the Court clarified that Halloway's automatic reversal rule applies "only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict."  535 U.S. 162, 168 (2002).  It also stressed that, in any event, a defendant must show a defective, though not necessarily an outcome-affecting, performance by counsel.  The Court then referred to courts of appeals which have applied Sullivan and its obligation to inquire into a potential conflict of interest "even when representation of the defendant somehow implicates counsel's personal or financial interests."  Mickens, 535 U.S. at 174.  The Court added, "It must be said, however, that the language of Sullivan itself does not clearly establish, or indeed even support, such expansive application."  Id. at 175.  It noted that the problem giving rise to the obligation to inquire was "the high probability of prejudice

-8-

arising from multiple concurrent representation, and the difficulty of proving that prejudice." Id.  It added, "Not all attorney conflicts present comparable difficulties." Id.

Were disagreements between attorney and client to be treated in the same manner as conflicts arising from multiple representation of clients - with resulting possible per se reversal without the necessity of proving prejudice - the nature of appeals in criminal cases would be dramatically altered.  The odds are that many an unsuccessful defendant would be found nursing some disagreement with counsel.

We therefore refuse appellant's suggestion to treat this as a case presenting notice of a potential conflict of interest requiring a special inquiry and the draconian remedy of reversal without a showing of prejudice.  But we hasten to recognize that differences between counsel and client can be so deep, pervasive and well-founded that effective legal assistance has been severely handicapped.  In such a case a court may well be called upon to grant relief.

In the instant case, there are two actions of the court at issue: its refusal to allow Sanchez to withdraw and its refusal to appoint substitute counsel.  Were the only issue that of the appropriateness of the court's refusal to permit withdrawal, Sanchez having been retained privately, there might be some question.  As we said in United States v. Woodard, 291 F.3d 95, 107 (1st Cir.

2002), a defendant is not ordinarily dependent on the court's permission to replace retained counsel. But here the two actions merge, since defendant and his family ran out of funds to retain other private counsel and defendant sought court appointed counsel.

In assessing the adequacy of the district court's inquiry under these circumstances, we acknowledge that "The extent and nature of the inquiry may vary in each case; it need not amount to a formal hearing." Id. at 108. The objectives of the inquiry are those set forth in United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986), applicable to denials of motions to substitute counsel:

> [T]he appellate court should consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense.

Cf. United States v. Reyes, 352 F.3d 511, 514 (1st Cir. 2003); United States v. Genao, 281 F.3d 305, 312 (1st Cir. 2002).

We set aside the timeliness issue as not having been advanced as a challenge to appellant. In reviewing the record, we see, first, the initial reason for dissatisfaction, attributed to defendant by Sanchez, and not denied - that he thought counsel should have obtained a more favorable plea agreement offer from the government. But it has not been pointed out to us why the district court was in error when it confessed that it saw no more favorable alternative that could have been offered. As we said in Genao, 281 F.3d at 313, "[T]he mere fact that a defense attorney and his client

-10-

disagreed about the advisability of a plea does not justify appointing new counsel."  We cannot say that Sanchez's advice to enter into this plea bargain was "aberrational."  See Allen, 789 F.2d at 92.

We find ourselves in the same situation as that in Allen: "Good cause for substitution of counsel cannot be determined solely according to the subjective standard of what the defendant perceives."  789 F.3d at 23 (internal quotation marks omitted); see also United States v. Beaver, 524 F.2d 963, 965 (5th Cir. 1975) (finding "mere subjective lack of confidence" in defense counsel does not establish insufficiency of counsel within the meaning of Sixth Amendment).

Defendant also accused Sanchez of deceiving him but advanced no details except to claim that he was not given adequate explanation of the agreement.  This, however, is belied not only by the representations of understanding and satisfaction with counsel contained in the plea agreement, but in the subsequent change of plea hearing where, after a recess to confer with Sanchez, defendant twice responded in the affirmative when asked if he was satisfied with his attorney's services.  In a lengthy colloquy with the court, defendant said that he understood the rights he was waiving, and the implications of his plea.  Finally, at the end of the sentencing hearing, when the court asked if defendant had anything he would like to say, defendant remained mute.

Defendant's final complaint, counsel's unavailability, is alleged without any particulars except a failed effort to reach counsel on the last two nights of the year.  Countering this, and not denied by defendant, is the repeated averment of Sanchez that he paid several visits to MDC Guaynabo, engaged in discovery, sought and obtained a hearing on the admissibility of a tape recording of a telephone conversation, and engaged in difficult negotiations.

As for defendant's assertion that there was a complete breakdown in communication, this was belied at the change of plea hearing on December 16 when Sanchez intervened at a critical point when it appeared that the court considered the plea agreement rejected.  He obtained a recess to allow him to confer with his client.  Subsequently the defendant once again professed himself satisfied.  The plea agreement continued to be the basis of the court's further inquiry.  This indicates to us that there still remained the elements of effective communication, continuing vigilance and concern on the part of counsel and trust on the part of the client. As we said in United States v. Myers, 294 F.3d 203, 208 (1st Cir. 2002), a defendant "must show that the conflict between lawyer and client was so profound as to cause a total breakdown in communication," preventing an adequate defense. Moreover, to the extent that there was a breakdown, it was the doing of defendant himself, and, as we said in Reyes, 352 F.3d at 516,

"[A] defendant cannot compel a change to [sic] counsel by the device of refusing to talk with his lawyer."

Finally, when we consider the ultimate question whether the disagreements between lawyer and client were likely to preclude effective assistance in the defense, we have in mind that the work of a lawyer for defendant was practically at an end. Sanchez had made a vigorous plea for helping defendant avoid deportation problems as a result of the sentence in the instant case. Beyond this, there lay presumably only the work of providing services on appeal - something beyond the scope of the request for substitute counsel.

In short, we think the district court gave adequate attention to the issues raised by defendant, and made appropriate inquiry into the causes and merits of the complaints. We hold that it was well within its discretion in refusing to appoint new counsel.

AFFIRMED.