No. 2--08--0430

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--2480 |
| RAYMOND D. ABERNATHY, | ) ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the opinion of the court:

Raymond D. Abernathy appeals from his conviction of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 2004)). Alleging that he was indigent, he contends that the trial court denied him his right to counsel when, during posttrial proceedings, it denied his request to discharge his privately retained attorney and appoint a public defender. Because the trial court assumed that Abernathy was able to afford an attorney without conducting an inquiry into his financial circumstances and instead treated the matter as one of choice of counsel, we reverse and remand for further proceedings.

I. BACKGROUND

In October 2005, Abernathy was charged with aggravated battery in connection with a shooting. Abernathy was originally represented by private attorney Gary Payton, but then retained private attorney Michael Fulton. There is nothing in the record indicating that Fulton was appointed

to represent Abernathy and, at oral argument, the parties agreed that Fulton was privately retained. The record does not show whether, when, or how Fulton was paid. The parties generally approach the appeal on the assumption that Fulton was paid by Abernathy's family. A jury trial was held and, on July 17, 2007, Abernathy was convicted. At that time, he was 19 years of age.

Abernathy moved for judgment notwithstanding the verdict and for a new trial. Proceedings on the motions were delayed because of negotiations with the State related to an attempted murder charge pending against Abernathy (the second case).

On December 6, 2007, Fulton informed the court that Abernathy wanted to discharge him and hire another attorney. Abernathy stated that he thought Fulton failed to represent him properly and that he did not want Fulton to represent him further. The court stated that Fulton would have to remain on the case until a new attorney was hired, and Abernathy said that he did not know if his family had funds available. Abernathy's mother was present and told the court that she would have to look into whether a new attorney could be hired.

The next hearing was held on January 4, 2008. Fulton did not appear, Abernathy told the court that his family was trying to raise money to hire another attorney, and the case was continued.

On January 11, 2008, the parties appeared in court, but Fulton was not present. The State told the court that Abernathy wanted a public defender appointed. The following colloquy then occurred:

"THE COURT: I have not discharged private counsel Mr. Fulton. He is a capable lawyer. I do not see why I should discharge him in favor of appointing private counsel even though defendant hasn't applied. In the view of--I am not going to when there is funds

available--when private counsel was hired I appointed the Public Defender and this way basically spending the public's money for private costs.

Certainly indigent defendants have the right to counsel. But once private counsel has been hired and is capable and willing to represent this defendant, I do not see how I can discharge the private counsel. The Sixth Amendment gives the right to counsel of choice, but you must pay for it, counsel of choice.

MR. HAXALL [Assistant State's Attorney]: Judge, I know the defendant previously indicated he wished to terminate Mr. Fulton's representation. I wonder if the Court would ask the defendant that [sic] if he is going to continue with Mr. Fulton or attempt to find alternate private counsel.

THE COURT: What are you going to do?

THE DEFENDANT: I have talked to my family. They doesn't [sic] have enough money for another attorney.

THE COURT: I will give you additional time or otherwise the case will proceed with Mr. Fulton as I indicated originally.

THE DEFENDANT: I terminated him because he ain't represent [sic] me like he suppose [sic] to.

THE COURT: That is your feeling[]. I do not know that. I have not conducted a hear [sic] with respect to that. Frankly, that's the attorney you hired yourself. It is your choice or was your choice.

How long do you need to hire your own attorney?

THE DEFENDANT: I have to talk to my family, your Honor. Like I said, they haven't enough money for another attorney."

Abernathy's father was present and stated that he did not know how much time they needed to seek an attorney. The court said it would keep Fulton on the case, stating: "Just because Mr. Abernathy may have had the disagreement with Mr. Fulton, doesn't mean that Mr. Fulton should be discharged." The matter was then continued.

On January 15, 2008, a hearing was held with Fulton present. The State informed the court that Abernathy had completed a certificate of assets, which does not appear in the record, and the following colloquy occurred:

"MR. FULTON: What Mr. Abernathy indicated to me is he does not desire me to represent him on the second case. And does not desire me to represent him on the case he was convicted of. He wants to terminate my services immediately.

THE COURT: When I see another attorney taking over then I will allow him to do that. I said that over and over. You are on the case. You did the trial. You are representing him.

MR. FULTON: Okay. That is fine. I was just asking on Mr. Abernathy's behalf that another attorney be allowed to substitute in. The public defender I would imagine.

THE COURT: Well, the public defender will not be available to substitute for a private attorney when a private attorney is on the case and a defendant happens to want to dismiss him on a whim. You provided him with proper and efficient representation. I do not see any way to discharge you. I don't see any issues except for a couple of times that you

were delayed or didn't come in. For the trial and everything else your performance appeared to be proper. And he has the ability to pay private counsel.

THE DEFENDANT: I would like to petition your Honor. And I don't have any money for another lawyer right now.

THE COURT: Mr. Fulton is on the case. I do not see any reason whatsoever to discharge Mr. Fulton. As I said just because you didn't like the result--Mr. Fulton is as I said an attorney. He is not a magician.

THE DEFENDANT: I didn't say he was a magician, your Honor.

THE COURT: Well, it appears to me that Mr. Fulton is representing you properly. I wouldn't discharge the public defender under those circumstances, neither would I discharge a private attorney.

***

THE DEFENDANT: I am not capable of representing myself. And he is not capable of representing me.

* * *

THE COURT: *** You have the right to counsel of your choice, but you do not have the right to have the public defender appointed because it happens that you didn't like as I said the result, or for some reason you have a disagreement with Mr. Fulton about a certain thing or another. I don't know if you do. That hasn't been presented to me. And under [two cases] I haven't heard anything to discharge Mr. Fulton. Mr. Fulton, do you have something to say?

MR. FULTON: Well, Judge, I would only indicate that Mr. Abernathy had indicated to me that he had some disagreements with some strategy decisions I made during the course

of the trial, different tactics that I used. At this time he said he is not comfortable with me representing him in the future. We had a disagreement, I guess, strategy wise, and we have not been able to come to an agreement in that regard. He feels that the strategies I imposed are not acceptable to him and that is why he wants me off the case.

THE COURT: All right.

THE DEFENDANT: Your Honor, you won't appoint me a public defender?

* * *

THE COURT: No. As I said I do not find any justification to discharge a private attorney who is effective. I cannot find that there is ineffective assistance and appoint the public defender and expend the public's money because you want to discharge or fire counsel of your choice.

THE DEFENDANT: What is the difference between giving me a public defender now and you have to give me one regardless, even if I do get sentenced?

THE COURT: Because you had the ability and demonstrated the ability to hire an attorney, and that attorney has been paid, and he is available to represent you. I cannot say that he was ineffective, sir."

The trial court stated that Fulton would remain on the case and on the second case. In the second case, there were delays because Abernathy changed his mind about executing a jury waiver and because of plea negotiations with the State. Abernathy also presented inconsistent indications about whether he would stipulate to some of the evidence.

The trial court denied Abernathy's posttrial motions and sentenced him to 16 years' incarceration. The trial court found him indigent for purposes of appeal and appointed the appellate

defender. Fulton then asked to withdraw from representation in the second case because of a "complete lack of trust" between himself and Abernathy. Fulton stated that he felt that, for Abernathy to have a fair trial, a public defender must be appointed. Fulton stated that both Abernathy and his family were "absolutely indigent." The trial court allowed Fulton to withdraw, stating that it had kept Fulton on the case because he was the attorney who started it. Based on Fulton's statements and because Abernathy had been sentenced to incarceration, the court found Abernathy to be indigent and appointed the public defender to represent him in the second case. Abernathy appeals, asking for a remand for new counsel to be appointed and a rehearing of his sentencing and his posttrial motions.

## II. ANALYSIS

Abernathy contends that the trial court violated his right to counsel when it denied his motion to discharge Fulton and appoint the public defender. The State argues that the court had discretion to limit Abernathy's choice of counsel and that the record shows that he was able to afford an attorney because he had previously retained private counsel.

Initially, the parties disagree on the standard of review. The State contends that the matter concerns a denial of a continuance to obtain substitute counsel, which is reviewed for an abuse of discretion. Abernathy asserts that review is de novo because the only issue is one of law.

In regard to the retention of private counsel, it is well settled that the constitutional right to counsel includes the right to be represented by retained counsel of one's own choosing. See People v. West, 137 Ill. 2d 558, 588 (1990). However, a criminal defendant has no right to choose his or her court-appointed counsel or insist on representation by a particular public defender. People v. Wanke, 303 Ill. App. 3d 772, 782 (1999). A determination of whether to grant a defendant's request for a continuance to allow time for retained counsel to appear requires balancing the defendant's

fundamental right to counsel of his or her choice against the interests of the State, the courts, and the witnesses in the efficient disposition of cases without unreasonable delay. People v. Little, 207 Ill. App. 3d 720, 723 (1990).

As the State observes, "[t]he granting or denial of a continuance motion is within the sound discretion of the trial court, and its ruling is not to be disturbed unless that decision amounts to an abuse of discretion." Little, 207 Ill. App. 3d at 724. Here, however, the issue is not merely one of the court denying a continuance to allow Abernathy to obtain new private counsel. Instead, Abernathy wished to discharge his private counsel in favor of appointed counsel, and the court denied his repeated requests to be appointed a public defender. Where, as here, there are no disputes of fact, whether a defendant's right to counsel has been violated is an issue of law that we review de novo. See People v. Probst, 344 Ill. App. 3d 378, 382 (2003).

"Under the sixth amendment to the United States Constitution, as well as Illinois law, a defendant has the right to appointed counsel if he is indigent and charged with a crime that could result in imprisonment." People v. Adams, 388 Ill. App. 3d 762, 767 (2009), citing U.S. Const., amend. VI; see 725 ILCS 5/113--3 (West 2004). Section 113--3(b) provides in part:

"In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. If there is no Public Defender in the county or if the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the Public Defender, the court shall appoint as counsel a licensed attorney at law of this State ***. The court shall require an affidavit signed by any defendant who requests court-appointed counsel. Such affidavit shall be in the form established by the

Supreme Court containing sufficient information to ascertain the assets and liabilities of that defendant. The Court may direct the Clerk of the Circuit Court to assist the defendant in the completion of the affidavit." 725 ILCS 5/113--3(b) (West 2004).

Although we review de novo the issue of right to counsel, "[a] finding of indigency is generally left to the trial court's discretion." Adams, 388 Ill. App. 3d at 767. "Such a determination should be based on as complete a financial picture as possible." Adams, 388 Ill. App. 3d at 767. A defendant need not be entirely without funds and can be indigent if he lacks financial resources on a practical basis to retain counsel. Adams, 388 Ill. App. 3d at 767. "The method of arriving at a determination of a defendant's ability to pay must include a balancing of assets against liabilities and also the defendant's income." Adams, 388 Ill. App. 3d at 767.

"Whether court-appointed counsel is appropriate must be carefully considered." Adams, 388 Ill. App. 3d at 767. "In a close case, trial courts should favor appointment of counsel to assure protection of the defendant claiming indigence." Adams, 388 Ill. App. 3d at 767; see also People v. Gustavson, 131 Ill. App. 2d 887, 889 (1971) (failure to appoint counsel is a serious deprivation). Where the court fails to determine eligibility for appointed counsel for a defendant who requests it, the appropriate remedy is reversal and a remand with directions to the court to ascertain the defendant's financial status and, if it determines that he or she is indigent, to appoint counsel. People v. Dass, 226 Ill. App. 3d 562, 566 (1992). Further, a violation of a defendant's right to counsel is not a trial error that can be quantitatively assessed in light of the evidence; instead, it is a fundamental constitutional error affecting a substantial right that defies harmless-error analysis. People v. Montgomery, 373 Ill. App. 3d 1104, 1112 (2007).

Normally, issues concerning substitution of counsel occur when a defendant seeks a continuance to discharge the public defender and hire private counsel. We are unaware of any Illinois cases directly discussing a defendant's desire to discharge privately retained counsel in favor of court-appointed counsel. However, cases concerning the appointment of counsel in general are helpful.

In People v. Valdery, 41 Ill. App. 3d 201, 202 (1976), the public defender's appointment was vacated after the defendant was able to raise $3,500 from his family for bail. The defendant informed the court that his family would not allow him to use the money to pay an attorney and that he did not have the funds to pay for one himself. The court refused to reappoint the public defender, and the defendant proceeded pro se. Noting that the right to counsel is fundamental, the Third District reversed, applying cases holding that the fact that a defendant is able to obtain funds from others does not in itself establish that he or she is not indigent. Valdery, 41 Ill. App. 3d at 203-04. The court remanded for a determination of the defendant's actual financial status and whether he qualified for court-appointed counsel. Valdery, 41 Ill. App. 3d at 204; see also People v. Eggers, 27 Ill. 2d 85, 88 (1963).

In People v. Shaw, 351 Ill. App. 3d 1087, 1090-91 (2004), the defendant, in a letter sent to the court during proceedings on a motion to reconsider the sentence, alleged that his privately retained counsel was ineffective. The motion to reconsider was denied and, on appeal, the defendant argued that the trial court erred by failing to conduct an inquiry into his claim of ineffective assistance of counsel. The Fourth District addressed circumstances when new counsel should be appointed to address a posttrial pro se ineffective assistance of counsel claim. The court recognized that, unlike situations involving court-appointed counsel, when private counsel is retained, the defendant has the authority to alter that relationship and could retain other counsel if he or she believed the original

counsel was ineffective. The court further observed that the defendant made no requests for new counsel and stated in <u>dicta</u> that, "[e]ven if it were true that defendant could no longer afford to hire another private counsel, he could have told the court that he wished to fire his then-counsel and asked the trial court to again appoint counsel to represent him." <u>Shaw</u>, 351 Ill. App. 3d at 1092. The court then determined that the trial court did not err by failing to inquire into the matter. <u>Shaw</u>, 351 Ill. App. 3d at 1092.

Outside Illinois, the specific issue presented here was addressed by the Supreme Court of California in <u>People v. Ortiz</u>, 51 Cal. 3d 975, 984-85, 800 P.2d 547, 553, 275 Cal. Rptr. 191, 197 (1990). There, the court determined that the trial court erred when it failed to allow the defendant, who had become indigent, to discharge his privately retained counsel. The court further held that the defendant was not required to demonstrate ineffective assistance of counsel or identify an irreconcilable conflict with the attorney.

In <u>Ortiz</u>, the court began with the basic principle that, while an indigent defendant must make a showing of inadequate representation or an irreconcilable conflict before substituting one appointed counsel for another, such a showing is not required when a nonindigent defendant seeks to discharge his or her retained counsel. <u>Ortiz</u>, 51 Cal. 3d at 984, 800 P.2d at 553, 275 Cal. Rptr. at 197. Discussing the defendant's desire to discharge privately retained counsel in favor of court-appointed counsel, the court held that no special showing other than indigency was required, stating that "it may be even more important for an indigent defendant to be able to discharge retained counsel: if his motion is denied, he must choose between proceeding with no legal assistance or continuing with a retained attorney reluctantly serving on a pro bono basis." <u>Ortiz</u>, 51 Cal. 3d at 984-85, 800 P.2d at 553, 275 Cal. Rptr. at 197.

The court further stated:

"In addition, the policy concerns underlying the rule that a defendant generally is not entitled to more than one <u>appointed</u> attorney [citation] are irrelevant when an indigent criminal defendant, like defendant here, makes a timely motion to discharge his <u>retained</u> attorney and obtain a public defender or other appointed counsel in the court's discretion. First, it is ordinarily appropriate to require the defendant who is seeking to substitute one appointed counsel for another to show cause, because he is requesting duplicative representation and repetitive investigation at taxpayer expense. This is <u>not</u> the case here: defendant is requesting appointed counsel for the first time in connection with his retrial. Accordingly, he should be treated no differently from a defendant who qualifies for representation by, and seeks appointment of, the public defender at the outset of the proceedings against him. No additional public expense or drain on the state's limited resources is at issue, nor, as long as the motion is timely, is there a risk of any undesirable opportunity to 'delay trials and otherwise embarrass effective prosecution' of crime [citation]. Second, unlike a *** defendant who will continue to be represented by an attorney at public expense if his motion is denied, the defendant in this case, on denial of his motion, will be represented by coerced, unpaid counsel, and exposed to all the attendant risks ***.

Equally irrelevant in this context are the concerns that underlie the rule denying indigent defendants the right to choose which attorney will be appointed to represent them. [Citations.] While defendant will require appointment of an attorney if he is permitted to discharge [his counsel] the issue raised by the trial court is merely whether he should be permitted to discharge [his counsel] without proving their incompetence or an irreconcilable

conflict; there is no suggestion that defendant is asking the court to appoint any particular attorney to replace [his counsel]." (Emphases in original.) Ortiz, 51 Cal. 3d at 986-87, 800 P.2d at 554-55, 275 Cal. Rptr. at 198-99.

Thus, the court ultimately stated:

"Although nothing we do here affects the rule that indigent defendants do not have the right to choose a particular attorney to be appointed at public expense, there is no interest compelling us to treat an indigent defendant any differently from a nonindigent defendant when he moves to discharge his retained counsel. In light of the importance of the right to counsel of choice and the sensitive nature of the relationship between a criminal defendant and his lawyer, we must not allow a defendant's indigence to prevent him from discharging in a timely manner the retained counsel he no longer wishes to represent him." Ortiz, 51 Cal. 3d at 987, 800 P.2d at 555, 275 Cal. Rptr. at 199.

The court also held that prejudice from the error would be presumed when an indigent defendant is forced to proceed with a retained attorney whom he or she has consistently and in a timely manner sought to discharge. Ortiz, 51 Cal. 3d at 988, 800 P.2d at 556, 275 Cal. Rptr. at 200. The reasoning in Ortiz has been adopted by the Utah Court of Appeals. State v. Barber, 2009 UT App. 91, ¶46, 206 P.3d 1233.

We find Ortiz persuasive and adopt its reasoning. We observe that, unlike in Ortiz, there is a possibility that Fulton was fully paid by Abernathy's family before Abernathy sought to discharge him. We recognize that if this is the case, some of the concerns about subjecting a defendant to reluctant pro bono counsel are removed, but the fact remains that the indigent defendant's right to appointed counsel is fundamental, and the public is not left at any particular financial disadvantage

when it is the defendant's first request for appointed counsel--something that he would have been entitled to from the beginning of the proceedings, provided that it was established that he was indigent.

Here, the trial court made several assumptions when it denied Abernathy's motion to discharge his counsel. First, the court assumed that, because Abernathy had previously been able to obtain private counsel, he was not indigent. However, such an assumption is not in accord with Illinois law. Instead, the court is required to inquire into the defendant's actual financial circumstances and reach a reasoned determination concerning indigency.

Second, the trial court assumed that the case was one of alleged ineffective assistance of counsel and that it was not required to appoint new counsel for such claims. However, while a nonindigent defendant would be responsible for his or her own choice of counsel and for replacing counsel that he or she believed was ineffective (see People v. Pecoraro, 144 Ill. 2d 1, 15 (1991)), here the concern is the fundamental right of an indigent defendant to have court-appointed counsel in the first place. Abernathy was not asking for a specific public defender, he was simply asking for court-appointed counsel in general. The upshot is that the trial court should have allowed Abernathy to show whether he was indigent and appointed counsel if that were the case. Its failure to do so violated Abernathy's fundamental right to counsel. Thus, under Valdery, we reverse and remand.

The State argues that, when the court denied the motion to discharge, it afforded Abernathy de facto appointed counsel by requiring Fulton to continue to represent him. However, the trial court did not state that it was appointing Fulton in place of a public defender. Instead, it simply denied the motion to discharge. Further, section 113--3(b) requires the appointment of the public defender, not private counsel, unless there is no public defender available or the defendant requests counsel other

than the public defender and the court finds that the defendant would be prejudiced by the appointment of the public defender. 725 ILCS 5/113--3(b) (West 2004). The State's argument is inconsistent with that approach. See Ortiz, 51 Cal. 3d at 990, 800 P.2d at 557, 275 Cal. Rptr. at 201 (addressing a similar argument).

The State also contends that Abernathy's motion to discharge was a delay tactic, requiring the denial of the motion because it would unduly interfere with the administration of justice. The right to choice of counsel is limited when abused, such as through " 'attempts to thwart, delay, or embarrass the effective administration of justice,' " or " 'when a conflict of interest might arise.' " People v. Childress, 276 Ill. App. 3d 402, 410 (1995), quoting People v. Young, 207 Ill. App. 3d 130, 133-34 (1990). But the trial court must specifically make such a finding. See Childress, 276 Ill. App. 3d at 412-13, quoting Young, 207 Ill. App. 3d at 135. Here, there was no such finding. Indeed, no such argument was even presented to the trial court. Further, the record does not support such a claim.

Generally, as to whether a defendant's request for substitution of counsel would constitute abuse, relevant factors include whether the request is a guise to temporarily thwart the administration of justice; lack of evidence that new counsel is ready, willing, and able to proceed with the case; failure of the defendant to articulate an acceptable reason for desiring new counsel; and representation by counsel for a lengthy period of time before the substitution request. Childress, 276 Ill. App. 3d at 411. Here, although Fulton had been retained for some time, Abernathy stated his reasons for seeking new counsel and the court expressed no concerns that the request was a delay tactic of any sort. Indeed, the court repeatedly continued the matter to allow Abernathy to seek substitute counsel. Because of delays in the second case and the timing of Abernathy's motion, there is no reason to

believe that granting it would have unreasonably delayed the proceedings in either case. We find nothing in the record to suggest that Abernathy's request was a delay tactic or that he was not sincere in his request.

Finally, the State argues that there was no evidence that the public defender was willing and able to represent Abernathy and suggests that this was further evidence of improper delay. However, as previously discussed, the issue is not choice of appointed counsel, it is the appointment of counsel in general. If Abernathy was entitled to appointed counsel, he was also entitled to the procedures set forth in section 113--3(b), which do not require that a public defender first be obtained or otherwise hailed into court by the defendant in order for an appointment to be made.

At oral argument, the parties agreed that Fulton was privately retained and further indicated their belief that Abernathy was indigent when he sought to discharge his private counsel in favor of appointment of the public defender. As a result, based on the denial of Abernathy's right to counsel, we reverse and remand for new posttrial and sentencing proceedings and, if Abernathy is still indigent, the appointment of counsel for those proceedings.

### III. CONCLUSION

We reverse and remand for new posttrial and sentencing proceedings and a determination of whether Abernathy is indigent. If Abernathy is indigent, the court must appoint counsel. The judgment of the circuit court of Lake County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

HUTCHINSON and BURKE, JJ., concur.