2017 CO 99

Jesus Manuel RONQUILLO, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

Supreme Court Case No. 14SC341

Supreme Court of Colorado.

October 16, 2017

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Michael C. Mattis, Deputy Public Defender, Denver, Colorado

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, Ethan E. Zweig, Assistant Attorney General, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 Several days before a long-pending trial date, Jesus Ronquillo decided he'd had enough of the lawyer he'd hired to defend him. He told the court that he was "tired of throwing away [his] money," and "thought it better to get a public defender." Counsel asked to withdraw, noting that he had been fired because Ronquillo thought he was "in cahoots" with the prosecutor and wasn't doing a good job and because Ronquillo could no longer afford to pay for his services. He argued that he and Ronquillo had suffered a complete breakdown in communication.

¶ 2 The trial court denied counsel's motion to withdraw, reasoning that it was too late in the game for counsel to exit the case because of non-payment, particularly in a case involving out-of-state witnesses. Therefore, the judge told Ronquillo he could go to trial as scheduled with retained counsel, or he could represent himself. Ronquillo chose option number one, and a jury convicted him as charged.

¶ 3 Ronquillo appealed. A division of the court of appeals concluded that the trial court erred by focusing on the non-payment issue and by not addressing the alleged breakdown in communication. To obtain substitute counsel in this retained-to-appointed scenario, it held, the defendant must show good cause. So, the division remanded the case to the trial court to expressly address that issue.

¶ 4 The question for us is whether on facts such as these a defendant must show good cause to fire retained counsel. Our answer is no. We hold that the Sixth Amendment right to hire counsel of choice includes the right to fire that counsel without showing good cause, even when a defendant seeks court-appointed counsel as a replacement.

¶ 5 But while a defendant may fire retained counsel for any reason, he may be limited in his options going forward in ways he does not appreciate. Thus, before granting defendant's request to release retained counsel, a trial court must ensure that the defendant understands the consequences of doing so. We outline the discussion that trial courts should have with defendants who wish to fire retained counsel.

¶ 6 Because the court of appeals erred by requiring Ronquillo to show good cause, we reverse its judgment and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 7 Jesus Manuel Ronquillo retained private defense counsel to defend him against charges that Ronquillo had sexually assaulted his son. Ronquillo remained in custody throughout the proceedings. On August 16, 2010, the court set trial for Tuesday, January 11, 2011. On Friday, January 7, 2011, defense counsel filed a motion to withdraw, and the court held a hearing on the motion.

¶ 8 Defense counsel explained that Ronquillo sought to terminate representation because Ronquillo (1) believed defense counsel was "in cahoots" with the prosecution, (2) felt defense counsel was not representing him adequately, and (3) was out of money to pay defense counsel. Addressing the court directly, Ronquillo confirmed those were the reasons motivating him. He also said he thought a public defender would do a better job. Defense counsel added that Ronquillo's dissatisfaction had led to a complete breakdown of attorney—client communication.

¶ 9 The prosecutor objected to withdrawal, explaining that he was "ready to go forward" and the victim was "interested" in doing so. He also pointed out that airfare had already been purchased for multiple out-of-state witnesses, although he volunteered that the tickets were refundable. He explained, therefore, "[I]f this is. continued there won't be any prejudice or lost money . . . ."

¶ 10 The district court denied the motion. It reasoned that non-payment did not constitute a sufficient reason to withdraw so close to trial, particularly when there were out-of-state witnesses. It ruled that Ronquillo could choose between (1) keeping retained counsel, whom the trial court would not allow to withdraw for lack of funds, or (2) representing himself. Ronquillo chose to keep retained counsel. He went to trial and was convicted of aggravated incest and sexual assault on a child by one in a position of trust.

¶ 11 On appeal, Ronquillo argued that he should have been able to discharge retained counsel at will, even when seeking court-appointed counsel. The court of appeals division recognized that defendants may discharge retained counsel, but noted that indigent defendants must show good cause before discharging appointed counsel. Because of the overlapping analytical frameworks, it held that the trial court should have determined whether Ronquillo had good cause to discharge retained counsel and obtain court-appointed counsel. Therefore, it remanded the case with directions that the trial court make the good-cause determination.

¶ 12 Ronquillo petitioned this court for review, and we granted certiorari.[1]

## II. Standard of Review

■ ¶ 13 We apply de novo review here. Although we review a trial court's rulings on withdrawal and appointment of counsel for an abuse of discretion, People ex rel. M.M., 726 P.2d 1108, 1121 (Colo. 1986); Nikander v. Dist. Court, 711 P.2d 1260, 1262 (Colo. 1986); see also Crim. P. 44(c) (withdrawal of a lawyer in a criminal case is generally a matter within the sound discretion of the court), we review questions of law—like which standard governs a motion to withdraw—de novo, see Lucero v. People, 2012 CO 7, ¶ 19, 272 P.3d 1063, 1065. Because the issue before us is whether the division applied the correct legal standard, we conduct de novo review.

## III. Analysis

¶ 14 We address the question before us in several steps. First, we examine a defendant's Sixth Amendment right to counsel of choice. Second, we consider a lopsided split of national authority regarding whether a defendant may discharge retained counsel without showing good cause, even if the defendant seeks to replace retained counsel with court-appointed counsel. We join the overwhelming majority of courts that have concluded that no good-cause showing is necessary. Third, we discuss how a trial court should ensure that a defendant understands and accepts the consequences of firing retained counsel before being allowed to do so. Finally, we apply these legal determinations

1. We granted certiorari to review the following issue: "Whether the court of appeals erred when it held that petitioner was required to demonstrate 'good cause' to discharge privately retained counsel before trial and obtain substitute appointed counsel."

to the facts before us, and we conclude that remand is necessary for the trial court to make findings under the framework we clarify today.

## A. The Sixth Amendment Right to Counsel of Choice

¶ 15 The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; see also Colo. Const. art. 2, § 16. The Sixth Amendment right to counsel applies to all state criminal prosecutions in which a defendant faces the prospect of incarceration. Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Scott v. Illinois, 440 U.S. 367, 373–74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

¶ 16 A criminal defendant's Sixth Amendment right to "Assistance of Counsel" includes the right to hire counsel of choice. United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); People v. Brown, 2014 CO 25, ¶ 16, 322 P.3d 214, 218–19. The right to hire counsel of choice "is the right to a particular lawyer regardless of comparative effectiveness," as opposed to the right to effective counsel, which "imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." Gonzalez-Lopez, 548 U.S. at 148, 126 S.Ct. 2557.

¶ 17 We afford the right to retained counsel of choice "great deference" because it is "central to the adversarial system and 'of substantial importance to the integrity of the judicial process.'" Brown, ¶ 16, 322 P.3d at 219 (quoting Rodriguez v. Dist. Court, 719 P.2d 699, 705 (Colo. 1986)). A trial court must therefore recognize a presumption in favor of a defendant's choice of retained counsel. See Tyson v. Dist. Court, 891 P.2d 984, 990 (Colo. 1995) (citing Wheat v. United States, 486 U.S. 153, 160, 163–64, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), in the context of determining whether to allow a defendant to waive the right to conflict-free counsel).

¶ 18 However, the right to counsel of choice does not extend to a defendant who requires counsel to be appointed for him.

Gonzalez-Lopez, 548 U.S. at 151, 126 S.Ct. 2557. He is guaranteed only effective assistance of counsel. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

¶ 19 An indigent defendant who wants to replace his court-appointed attorney with another court-appointed attorney must show "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict." People v. Arguello, 772 P.2d 87, 94 (Colo. 1989) (quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981)). This ability to change appointed counsel upon good cause is unrelated to the right to counsel of choice; it protects only the right to effective assistance of counsel. United States v. Jimenez-Antunez, 820 F.3d 1267, 1271 (11th Cir. 2016). "[I]f good cause exists, a defendant no longer has effective representation." Id.

## B. Must a Defendant Show Good Cause for Firing Retained Counsel When Seeking Appointed Counsel?

¶ 20 The right to counsel of choice applies any time a defendant seeks to hire retained counsel, even if that involves firing appointed counsel. It doesn't apply when a defendant seeks to fire appointed counsel just to have different counsel appointed; such a defendant must show good cause. Does it apply when a defendant seeks to fire retained counsel and receive appointed counsel? Neither this court nor the Supreme Court of the United States has yet answered that question.

¶ 21 Other courts are divided, but not evenly. The First Circuit, in United States v. Mota-Santana, 391 F.3d 42, 44, 47 (1st Cir. 2004), required that the defendant seeking to replace retained counsel with appointed counsel show good cause for the substitution. Although the court recognized that defendants ordinarily may fire retained counsel without court permission, it held that the calculus changed when the defendant sought to have replacement counsel appointed. Id. at

47. It reasoned that the "two actions"—discharging retained counsel and seeking appointed counsel—merge. Id. The court thus treated the retained-to-appointed substitution as though the right to counsel of choice were inapplicable. See id.

¶ 22 The Eleventh Circuit, in Jimenez-Antunez, rejected the First Circuit's approach. 820 F.3d at 1272. It noted that the First Circuit provided no reason why, when the two actions merged, the first (the discharge of retained counsel) should be treated as irrelevant while the second should be given force. Id. Further, it explained that the First Circuit's merger theory conflates the right to counsel of choice, which the discharge of retained counsel implicates, with the right to effective counsel, which is all the good-cause test protects. Id.

¶ 23 The Jimenez-Antunez court held instead that "[a] defendant exercises the right to counsel of choice when he moves to dismiss retained counsel, regardless of the type of counsel he wishes to engage afterward." Id. at 1271. This conclusion follows, the court explained, from the order of events: The defendant seeks first to discharge retained counsel and then to have replacement counsel appointed. Id. The right to counsel of choice at the first step is not destroyed by adding the second. See id. ("[T]hat distinct right [to effective representation] does not alter the right under the Sixth Amendment to hire and fire retained counsel."). Thus, held the court, a motion to dismiss retained counsel should be granted except when doing so would "interfere with the 'fair, orderly, and effective administration of the courts.'" Id. at 1272 (quoting United States v. Koblitz, 803 F.2d 1523, 1528 (11th Cir. 1986)).

¶ 24 A strong majority of other courts to consider the issue align with the Eleventh Circuit's approach. See United States v. Brown, 785 F.3d 1337, 1344 (9th Cir. 2015); People v. Ortiz, 51 Cal.3d 975, 275 Cal.Rptr. 191, 800 P.2d 547, 555 (1990); People v. Abernathy, 399 Ill.App.3d 420, 339 Ill.Dec. 203, 926 N.E.2d 435, 444 (2010) (adopting the rationale from Ortiz); Dixon v. Owens, 865 P.2d 1250, 1252 (Okla. Crim. App. 1993) (same); State v. Barber, 206 P.3d 1223, 1235 (Utah Ct. App. 2009) (same); see also Lovin v. State, 286 S.W.3d 275, 286 (Tenn. 2009) ("When a prisoner desires to discharge a retained lawyer, the appropriate focus is on balancing the prisoner's right to discharge his or her lawyer against the court's obligation to administer justice efficiently by avoiding unreasonable delay."); Shaw v. State, 148 So.3d 745, 758 (Ala. Crim. App. 2013) (same). That majority includes the division in People v. Munsey, 232 P.3d 113, 127 (Colo. App. 2009), which authored the only published case on the issue from the Colorado Court of Appeals. Indeed, we are aware of no other court (aside from the division of the court of appeals in this unpublished opinion) taking the First Circuit's approach.

¶ 25 For two reasons, we reject the People's argument that the Supreme Court foreclosed the majority approach when it said that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." Gonzalez-Lopez, 548 U.S. at 151, 126 S.Ct. 2557. First, context suggests that the Court merely meant to recite the established limitation that a defendant requesting a free lawyer can't choose which one he's given. The Court opened the relevant paragraph by explaining that it was leaving intact its "previous holdings that limit the right to counsel of choice," id., thereby suggesting that the limitations to follow had already been established. Second, on its face, the sentence at issue does not apply to a defendant who wishes to fire retained counsel. A defendant who wishes to fire retained counsel obviously has retained counsel, and therefore does not yet "require counsel to be appointed." He doesn't "require" appointed counsel until retained counsel has been allowed to withdraw.

¶ 26 The Eleventh Circuit's rationale in Jimenez-Antunez persuades us that the majority approach is correct. A corollary of the right to hire is the right to fire: "The right to choose counsel is incomplete if it does not include the right to discharge counsel that one no longer chooses." 820 F.3d at 1271.

¶ 27 We now join the majority of jurisdictions and hold that the right to counsel of choice includes the right to fire re-

tained counsel. A defendant who wishes to discharge retained counsel may do so without good cause, even if he seeks to replace retained counsel with appointed counsel.

¶ 28 Petitioner asked us only whether good cause is required to fire retained counsel; we've answered that question, so we need not go further. But were we to say what courts shouldn't do in this situation (require good cause) without explaining what they should do, we would leave the lower courts without guidance in a procedural and constitutional thicket. Therefore, we will describe the analysis that a trial court should follow when a criminal defendant asks to fire retained counsel.

### C. Considerations Before Releasing Counsel

¶ 29 While a defendant may fire retained counsel for any reason, circumstances may prohibit him from proceeding the way he desires. For example, were a defendant to learn that he would not be allowed enough of a delay in proceedings for a new lawyer to get up to speed, he might reconsider his decision to fire his current counsel. Thus, before a trial court grants a request to release retained counsel from a case, it must ensure that the defendant understands and accepts the consequences of doing so.

¶ 30 Of course, a trial court can't explain the consequences of firing counsel until it has determined what those consequences will be. So, when considering a motion to fire counsel (however framed), a court should first ascertain how the defendant wishes to be represented going forward. See Jimenez-Antunez, 820 F.3d at 1272.

¶ 31 What happens next will depend on how the defendant wants to proceed.

¶ 32 If the defendant wants to represent himself, he may. Faretta v. California, 422 U.S. 806, 832, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The Framers selected

in the Sixth Amendment a form of words that necessarily implies the right of self-representation."). However, he must first voluntarily, knowingly, and intelligently waive the right to counsel under the procedures described in Arguello. 772 P.2d at 95–96.

¶ 33 If, instead, the defendant seeks replacement counsel, several questions arise. If the defendant wants appointed counsel, does he qualify for one? Does the trial schedule allow, or is defendant entitled to, enough time for new counsel to come up to speed? The trial court must answer these questions, which we address in turn.

¶ 34 First, a defendant seeking appointed counsel will need to know whether he qualifies for it. Our statutes set out the eligibility requirements for receiving court-appointed counsel. See § 21-1-103, C.R.S. (2017) (explaining whom public defender shall represent); § 21-2-103, C.R.S. (2017) (explaining whom alternate defense counsel shall represent). In Colorado, a defendant in custody, like Ronquillo, automatically qualifies for a public defender. C.J.D. 04-04(III).

¶ 35 Second, the court must decide whether to allow the defendant enough time for replacement counsel to take over the case; the right to counsel of choice is not absolute and must sometimes give way to "the demands of fairness and efficiency." Brown, ¶ 20, 322 P.3d at 219 (citing Gonzalez-Lopez, 548 U.S. at 152, 126 S.Ct. 2557 (recognizing "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar" (citation omitted))). In some situations, it may be obvious to the trial court that the schedule contains ample time for a new attorney to take over without need for a continuance. But in others, a delay in proceedings may be necessary to accommodate the change in counsel, and the court should determine whether the defendant is entitled to a continuance under the test we set out in Brown, ¶¶ 24–25, 322 P.3d at 220–21.[2] As we

---

2. Of course, the defendant's right to effective assistance of counsel may compel a continuance even if Brown, which is based solely on the right to counsel of choice, would not. The procedure we set out today covers a request to fire retained counsel based on the right to counsel of choice, for which good cause is not required. But if good cause exists, such as a complete breakdown in communication or an irreconcilable conflict, then current counsel cannot effectively represent the defendant. See Arguello, 772 P.2d at 94; Jimenez-Antunez, 820 F.3d at 1271 ("[I]f good

explained, "[W]hen deciding whether to grant a continuance to allow a defendant to change counsel, the trial court must conduct a multi-factor balancing test and determine whether the public's interest in the efficiency and integrity of the judicial system outweighs the defendant's Sixth Amendment right to counsel of choice." Id. at ¶ 2, 322 P.3d at 216.[3]

¶ 36 We note that a Brown analysis will require some adjustment where, as here, replacement counsel has not yet been identified. In Brown, replacement counsel had already been selected and entered an appearance, and two of Brown's factors assume that replacement counsel is already chosen: (2) "the availability of chosen counsel," and (3) "the length of continuance necessary to accommodate chosen counsel." ¶ 24, 322 P.3d at 221. In a case like this one, where replacement counsel has not yet been selected, the trial court will need to draw on its own experience to make assumptions about when counsel will likely be available and how long counsel will likely need to prepare.

¶ 37 At this point, the court should know whether the defendant will be able to proceed as he wishes.

¶ 38 If he will be, then the court should proceed accordingly. Thus, for a defendant who wishes to go pro se and has adequately waived his right to counsel under

Arguello, the court should release retained counsel and allow the defendant to represent himself. And for a defendant who wants new counsel, qualifies for appointed counsel if necessary, and has (or is entitled to) enough time for the new lawyer to ramp up, then the court should release retained counsel and appoint counsel if needed.

¶ 39 But what if there are impediments that prevent the defendant from proceeding as he wishes? Maybe the defendant wants to go pro se but refuses to waive his right to counsel under Arguello. Or maybe the defendant wants new counsel but either is ineligible for the appointed counsel he seeks or isn't entitled under Brown to enough time for a new lawyer to take over the case.

¶ 40 In the case of such an impediment, the court can insist that the defendant choose between keeping retained counsel or waiving the right to counsel and proceeding pro se. See Arguello, 772 P.2d at 94. For a defendant who balks at this choice, the trial court should instruct the defendant that a refusal without good cause to proceed with able counsel will effect a "voluntary" waiver of the right to counsel. Id. In that situation, the trial court should ensure that the waiver is knowing and intelligent by making sure the defendant understands all facts "essential to a broad understanding of the whole matter." Id. at 94–95.[4]

---

cause exists, a defendant no longer has effective representation."). In such a situation, the defendant would be entitled to the time reasonably necessary for replacement counsel to become effective. See Arguello, 772 P.2d at 94 (explaining that, if the defendant establishes good cause, then "the court is required to substitute new counsel." (emphasis added)).

**3.** In Brown, ¶ 24, 322 P.3d at 221, we directed trial courts to consider and make a record of the impact of these factors:

1. the defendant's actions surrounding the request and apparent motive for making the request;
2. the availability of chosen counsel;
3. the length of continuance necessary to accommodate chosen counsel;
4. the potential prejudice of a delay to the prosecution beyond mere inconvenience;
5. the inconvenience to witnesses;
6. the age of the case, both in the judicial system and from the date of the offense;

7. the number of continuances already granted in the case;
8. the timing of the request to continue;
9. the impact of the continuance on the court's docket;
10. the victim's position, if the victims' rights act applies; and
11. any other case-specific factors necessitating or weighing against further delay.

**4.** Here is the full explanation from Arguello:

A waiver cannot be knowing and intelligent unless the record clearly shows that the defendant understands

the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

Other factors considered by courts in determining whether the waiver was knowing and

### D. Summary of Process for Firing Retained Counsel

¶ 41 In sum, when a criminal defendant seeks to fire retained counsel, a trial court should carry out the following steps. First, it should find out how the defendant wishes to proceed. Second, it should determine whether there are any procedural impediments to proceeding as defendant wishes. For a defendant who wants to go pro se, this means the court should follow Arguello to determine whether the defendant will voluntarily, knowingly, and intelligently waive his right to counsel. For a defendant who seeks replacement counsel, the court must determine (1) whether defendant will qualify for appointed counsel if necessary and (2) whether the defendant has, or is entitled to under Brown, enough time to accommodate new counsel.

¶ 42 If there are no procedural impediments, the court should release retained counsel and proceed as defendant wishes.

¶ 43 If, on the other hand, procedural impediments preclude the defendant's preferred representation, then the court should give the defendant the choice between (1) keeping retained counsel and (2) waiving the right to counsel and representing himself. Further, the court should instruct the defendant that a choice at this stage to refuse representation by able counsel may effect a voluntary waiver of the right to counsel. For a defendant who does so refuse, the court should ensure that such voluntary, implied waiver is also knowing and intelligent as described in Arguello, 772 P.2d at 94–95.

### E. Application

¶ 44 Here, neither the trial court nor the court of appeals adequately protected Ronquillo's right to counsel of choice.

¶ 45 The trial court improperly weighed Ronquillo's reasons for firing retained counsel when it placed so much emphasis on Ronquillo's inability to continue paying retained counsel. As we discussed above, the right to counsel of choice includes the right to fire retained counsel for any reason. True, Brown allows a court deciding whether to grant a continuance for a change of counsel to consider a defendant's "apparent motive for making the request." 322 P.3d at 221. But that factor serves only to prevent misfeasance by defendants, such as attempting to delay criminal proceedings. See People v. Maestas, 199 P.3d 713, 717 (Colo. 2009) (describing "improper purposes" for exercising right to counsel of choice). It does not allow courts to weigh a defendant's legitimate reasons for firing retained counsel, even if those reasons seem insignificant or wrongheaded. Thus, the trial court should not have factored Ronquillo's legitimate reason for firing retained counsel (his inability to pay) into its analysis.

¶ 46 The court of appeals made a different error when it improperly required Ronquillo to show good cause for firing retained counsel. As we hold today, a defendant need not show good cause in order to fire retained counsel.

¶ 47 The People argue we should affirm the trial court's decision anyway. They reason that the trial court has already effectively ruled on the proper test because its rationale for denying the motion to withdraw was based in part on permissible considerations. Namely, the trial court seemed to assume a continuance would be necessary, and it considered how that would affect the witnesses, victim, and prosecution. These are valid considerations weighing against a defendant's right to counsel of choice under Brown, ¶ 24, 322 P.3d at 220–21.

¶ 48 But the People's argument still fails. The trial court based its decision in part on one of Ronquillo's legitimate reasons for firing retained counsel, namely lack of funds to pay him. That was error. Moreover, we have no way to know how much weight the court

intelligent include whether the defendant understood the requirement of complying with the rules of procedure at trial, whether the exchange between the defendant and the judge consisted merely of pro forma answers to pro forma questions, and whether the defendant was attempting to delay or manipulate the proceedings. In each situation, the validity of the waiver must be determined on the basis of the particular facts and circumstances of the case, including the background, experience, and conduct of the defendant.
772 P.2d at 94–95 (citations omitted).

assigned that impermissible consideration in reaching its decision. In determining whether to give Ronquillo time to fire counsel and obtain appointed counsel, the trial court should have limited its analysis to the type of considerations contemplated by Brown. That determination has not yet been made.

## IV.  Conclusion

¶ 49 The right to counsel of choice applies to a defendant who wishes to fire retained counsel, regardless of how he wishes to be represented next. The court of appeals erred by requiring Ronquillo to show good cause for firing retained counsel. We reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.