THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM H. WOOD, Defendant-Appellant.

Fifth District    No. 79-263

Opinion filed November 17, 1980.

John H. Reid and John F. Erbes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert F. A. Stocke, State's Attorney, of Louisville (Martin N. Ashley and Christopher S. Carroll, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant, William H. Wood, was convicted of arson following a jury trial in the circuit court of Clay County. He was sentenced to five years' imprisonment. The sole question on appeal is whether he was improperly denied appointed counsel at trial.

Defendant, pro se at trial, presented the testimony of several alibi witnesses that he was playing cards at the time of the offense. The State relied primarily on the testimony of two accomplices, both of whom had pleaded guilty to the same offense. Defendant did not testify at trial.

Defendant was initially charged with arson and three counts of theft. Bail was set at $40,000, and defendant was released upon his deposit of $4000. Defendant's retained attorneys thereafter moved to withdraw from the case, citing defendant's failure and refusal to pay them. These motions were granted at a March 23, 1977, hearing at which defendant informed the court (Judge Michaelree) that he would hire other counsel and expected to pay them from the proceeds of property he had listed for sale. Defendant was subsequently charged with "failure to appear," for which bail was set at $20,000. On June 24, 1977, defendant deposited $2000 and was again released. On June 27 he appeared before Judge Michaelree and requested the public defender be assigned to his case. In his June 27 affidavit of assets and liabilities he stated that he was divorced and had three children, that he was an unemployed ironworker, and that he had no present income. He stated that he had no home or dwelling, real property, car, or securities, and listed his sole asset as $150 cash on hand. He listed liabilities of $33,000 owed to banks in Centralia, Monticello, and Altamont and stated he was released on bail of "approximately $21,000 to be assigned to lender." Public Defender Michael Dunston was assigned to the case.

On July 6, 1977, defendant filed his "assignment of refund of bail

deposit," reciting that he had no interest in that deposit and requesting that the money be returned to his ex-wife.

On November 28, 1977, Public Defender Michael Dunston filed his motion to withdraw from defendant's case, citing as grounds, (1) Dunston's caseload and (2) that defendant was not indigent in view of the fact that defendant had $14,400 in cash deposited for bail in six southern Illinois counties. The motion was granted by Judge Wineland, who ordered defendant to appear on December 12 to make application for appointed counsel if he could show his inability to hire private counsel.

Defendant's December 12, 1977, request for appointed counsel was heard by Judge Spitler. On that date defendant filled out a new affidavit of assets and liabilities, in which he stated he had no income or real property and no car. He listed as assets $500 in clothing and $3 cash. He listed $35,000 in debts owed to banks in Altamont and Centralia, and stated that he was released on $15,000 "borrowed" bail.

In response to questioning by the state's attorney, defendant stated he lived by borrowing from friends and had no permanent address. He maintained that he had agreed pursuant to his divorce to give his ex-wife certain real estate. Further, he had conveyed other real estate to one D. Hart for $10,000 to $12,000 and paid the proceeds to his ex-wife. His bail had been borrowed from his ex-wife, who had borrowed it from D. Hart and friends and relatives. Defendant knew of no court order requiring the conveyances to his ex-wife, maintaining he had made them pursuant to their verbal agreement. The court observed that the divorce decree recited that the matter of division of property was reserved. Defendant further stated that while some conveyances predated his bail deposit in the instant case, others did not. The state's attorney argued that voluntary transfers had been made to obtain appointed counsel. Judge Spitler, noting the divorce decree provided for no payments whatsoever, refused to appoint defense counsel.

On March 28, 1978, another hearing on defendant's request for appointed counsel was held before Judge Wineland. There the state's attorney asserted that on April 1, 1977, defendant had conveyed certain real estate to Keith and Kevin Clark of Centralia for $16,000. Defendant responded that the proceeds of that sale were committed to his ex-wife, who had received the proceeds after paying off a "considerable" mortgage on the same property. The state's attorney called attention to the lack of a court order for division or conveyance of property and stated his further "understanding" that defendant had conveyed 42 acres to her without court order. Defendant responded that there was no law prohibiting him from giving property to his children and ex-wife. At that point the court had defendant sworn as a witness.

Defendant testified that after his divorce he conveyed real estate to

the Clarks for $16,000. He conveyed 40 acres to his ex-wife, which property he had owned as a joint tenant with her, for no consideration, but she had assumed a $37,000 debt secured by that property. The two acres in Flora which he had conveyed to her were worth more than $8000. He owed a Centralia bank $16,000 to $17,000, secured by two trucks (neither of which was late-model) and his life insurance worth $5000. He owed a Monticello bank $1200. He owed an Altamont bank $4000, plus another $37,000 debt, the one his ex-wife had assumed. He had sold D. Hart certain real estate for $11,000 to $12,000 and given his ex-wife and children the proceeds, though no court order required him to do so. He maintained he had agreed to give her "everything" and had done so. He noted that the public defender in Marion County had been appointed to represent him and that it would take a "millionaire" to defend all the charges against him.

Judge Wineland noted defendant had deposited considerable cash bond in the circuit courts of various counties and had employed a Piatt County attorney on a fee basis. He noted defendant had apparently conveyed all of his assets to his ex-wife voluntarily and that she had used some of the proceeds to provide his bail. He characterized defendant's affidavits of assets and liabilities as incomplete. Appointed counsel was denied. On the following day defendant filed his notice of appeal.

On June 26, 1978, another hearing was held regarding defendant's request for counsel, Judge Wineland presiding. Defendant urged he had been denied the public defender because he was at liberty on bail. The court responded that appointed counsel had been denied because of the conveyances to his ex-wife. Judge Wineland denied defendant's request by written order filed July 7, 1978, noting as grounds: (1) defendant had $16,000 posted for bail in various counties, (2) after the instant charges were filed, defendant conveyed various realty without consideration or court order, and (3) defendant failed to disclose his assets fully.

Meanwhile, defendant's appeal to this court was dismissed for lack of an appealable order.

On August 7, 1978, at a hearing, Judge Slater again denied defendant's request for appointed counsel after being apprised that defendant still had bonds posted in that circuit.

At a motion hearing on September 14, 1978, before Judge Slater, the State filed two additional charges against defendant for which bond was set at a total of $2000. Defendant requested and received permission to go home to get bond. Judge Slater suggested he use some of his money for an attorney.

At a September 19, 1978, hearing before Judge Ginos, defendant renewed his request for appointed counsel. Defendant filled out a third affidavit of assets and liabilities on September 25, reporting earnings of

$300 per month and assets of a house trailer, a 1965 Buick, and $100 cash. He listed his total liabilities as $60,000 owed to various banks and stated he was released on $18,000 total bail. Judge Ginos appointed the public defender.

Public Defender John P. Coady filed his motion to withdraw on November 17, 1978. Coady stated therein that (1) in Marion County defendant was charged with arson, unlawful restraint, and three counts of felony theft, and counsel's motion to withdraw as defendant's attorney had been granted in that county; (2) in Effingham County defendant was charged with burglary, criminal damage to property, unlawful use of weapons, and two counts each of arson and felony theft, and counsel had been permitted to withdraw from those cases; (3) defendant was charged with reckless conduct in Clinton County, felony theft in Wayne County, and 13 firearms violations in the Federal District Court in East St. Louis, none of which had been assigned to Coady; (4) in Clay County, defendant was charged with arson, perjury, falsifying information, and three counts of felony theft; (5) total bail bonds for the above mentioned charges was $214,000; and (6) defendant had deposited a total of $16,400 in the jurisdictions named and was out on bail in all those jurisdictions. Counsel sought to withdraw based solely on the amount of the bail deposits.

Coady's motion was argued on November 30, 1978, before Judge Dailey. Defendant insisted the money he had deposited for bail was not his to assign to counsel. The state's attorney urged in support of Coady's motion that defendant had sold certain real property, an apparent reference to the Clark sale. Defendant did not deny the sale but maintained that his ex-wife had received the proceeds in exchange for her agreement to assume certain debts. Judge Dailey commented that he could not see how any judge could find a man who had deposited over $16,000 in bonds indigent, and that in the eyes of the law that money belonged to the defendant and could be assigned to a lawyer. The motion to withdraw was granted. On January 4, 1979, defendant's renewed request for appointed counsel was denied by Judge Dailey.

Defendant is represented in this appeal by the office of the State Appellate Defender.

■■ The right of an accused to counsel under the sixth amendment cannot be dependent upon his ability to pay for an attorney's services. (See *Gideon v. Wainright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.) We presume that defendant suffered some prejudice from the trial court's refusal to appoint the public defender, for example, that trained legal counsel could have prepared a more persuasive presentation of defendant's alibi defense. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calcu-

lations as to the amount of prejudice arising from its denial." *Glasser v. United States* (1942), 315 U.S. 60, 76, 86 L. Ed. 680,702, 62 S. Ct. 457, 467.

Accordingly, our narrow inquiry on this appeal is whether defendant was improperly denied appointment of counsel, for if he was, we must assume the error was of prejudicial dimension and reverse and remand for a new trial. Section 113—3(b) of the Code of Criminal Procedure of 1963 provides that in all cases, except where the penalty is a fine only, "if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel." (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b).) Defendant urges on appeal that since section 113—3(b) does not impose the burden of proof of indigency or non-indigency on either party and in view of the significance of a trial court's determination of the indigency question, appointed counsel should not be denied without a showing that the accused is not indigent. However, we need not decide that question, as our decision of this case does not depend on allocation of the burden of proof.

Defendant urges that the trial court erroneously determined that he was not indigent on the basis of his substantial bail deposits, citing *People v. Valdery* (1976), 41 Ill. App. 3d 201, 354 N.E.2d 7, and *People v. Eggers* (1963), 27 Ill. 2d 85, 188 N.E.2d 30. We agree with defendant that under those cases, appointed counsel cannot be denied an accused merely because he has posted bail. While it is true that this case is distinguishable from both *Eggers* and *Valdery* in view of the very large amount of bail deposited by the instant defendant, we believe the amount of the deposit or deposits is not relevant to the issue of defendant's ability to pay counsel fees where, as here, defendant's testimony that the bail was borrowed is uncontradicted. It is common knowledge that bail is often posted for defendants by friends, relatives, or other benefactors. (*A-1 Lithoplate v. AFS Publishing Co.* (1978), 66 Ill. App. 3d 560, 384 N.E.2d 395.) Such persons' willingness to post bail must depend in part on the likelihood of return of those funds. Thus even the unusually large bail deposits in this case could well be borrowed on the condition that it would be returned quickly and not assigned except to the lender. The conclusion that such funds are assignable to an attorney for his fee is not compelled in such circumstances.

The State urges that the law presumes bail deposits are in fact the property of the accused, citing *People v. Nicholls* (1977), 45 Ill. App. 3d 312, 359 N.E.2d 1095, *modified* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and *People v. Lowder* (1974), 21 Ill. App. 3d 985, 316 N.E.2d 159. However, we do not read these cases as adopting the view that bail deposits are presumptively the defendant's for all purposes. Under *Nicholls*, the accused's bail bond is presumptively his for the purpose of paying fines and costs. Under *Lowder*, the same presumption is indulged with respect

for forfeiture of the bail deposit where the accused has failed to appear as ordered. Both liabilities are mandated by statute (Ill. Rev. Stat. 1979, ch. 38, pars. 110—7(h), (i)), and one who posts or furnishes bail is presumably aware of the risk of forfeiture or assessment of fines and costs. The same is not true of attorneys' fees. We note in that regard that the portion of the bail bond statute providing for assessment of the costs of appointed legal counsel against bail deposits was recently declared unconstitutional by our supreme court. Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g); *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56.

The State also urges that section 110—7(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(f)) authorizes payment of the bail deposit to either defendant or his attorney and to no one else. It is our view that that section imposes no burden on a defendant to assign his bail to his attorney where, as here, defendant's testimony that he has borrowed his bail deposits is uncontradicted.

Accordingly, we conclude that the trial court's November 30, 1978, granting of the public defender's motion to withdraw on the sole ground that defendant had substantial bail on deposit in various Illinois counties was erroneous.

Thus we must consider whether the remaining evidence of defendant's financial situation indicates that defendant was able to employ counsel to defend against the instant charges. Many of the transactions referred to of record, which would otherwise be of assistance to this court in making that determination, are described with such imprecision that multiple conclusions are possible from the scant facts adduced. This is particularly true in that the dates of several transactions and conveyances do not appear of record. Thus with respect to certain transactions we cannot determine whether they were made prior to the filing of charges in this cause, a sequence which could support an inference of innocent motivation, or after the filing of charges, a sequence supporting the inference urged by the State that the conveyances were made to obtain appointed counsel.

However, the following facts of record admit of more certain conclusion. Defendant conceded before Judge Spitler at the December 12, 1977, hearing, that some of his conveyances to his ex-wife were made subsequent to the time defendant posted bail in the instant case. Defendant testified at a March 23, 1977, hearing before Judge Michaelree that he was trying to sell certain real estate to hire private counsel. Defendant testified before Judge Wineland on March 28, 1978, that he sold certain real estate on April 1, 1977, and gave the proceeds, $16,000, to his ex-wife. The April 1, 1977, transaction was after the withdrawal of defendant's private counsel and predated defendant's first request for appointed counsel in this case. Defendant admitted that no court order

required the conveyances to his ex-wife. There was never any showing of an enforceable agreement requiring those conveyances or that there was some consideration therefor. This is true in particular with respect to the proceeds of the April 1, 1977, sale. We note as well that defendant and his ex-wife list the same residence address and, according to defendant, he still resides with her periodically.

■■ On the basis of these facts, we conclude that defendant's testimony and admissions showed that he made gratuitous conveyances to his ex-wife, during the pendency of this case, of property and money which defendant could have used to hire appointed counsel. Where it appears the accused has some assets or funds available, indigency becomes a matter of degree within the sound discretion of the trial court. (*People v. Maretti* (1978), 61 Ill. App. 3d 762, 378 N.E.2d 342.) We believe the trial court should have concluded on the basis of defendant's transactions during the pendency of this case that defendant had or controlled assets sufficient to enable him to employ counsel.

We affirm the judgment of the circuit court of Clay County.

Affirmed.

KARNS and SPOMER, JJ., concur.