2020 IL App (3d) 180172

Opinion filed July 1, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0172 Circuit No. 17-TR-4284 |
| | ) ) | Honorable |
| YASHIE MOORE, | ) ) | Susan S. Tungate and Thomas W. Cunnington, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Schmidt and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Yashie Moore, appeals from his conviction for driving on a revoked license. Defendant argues the Kankakee County circuit court erred when it refused to appoint counsel to represent him on the basis that a third party had posted bond on defendant's behalf and that bond could be used to pay private counsel. We affirm.

¶ 2                              I. BACKGROUND

¶ 3     The State charged defendant by citation with driving on a revoked license (625 ILCS 5/6-303(a) (West 2016)).

¶ 4        On May 3, 2017, defendant's first appearance, Judge Thomas W. Cunnington admonished defendant that the State had charged him with a Class A misdemeanor punishable by a sentence of up to 364 days in jail. The court explained to defendant that the hearing was intended to (1) determine if defendant wanted the court to appoint the public defender and (2) set defendant's bond. Defendant told the court, "I'll hire a lawyer, yes." Before setting defendant's bond, the court asked how much money defendant could afford to post. Defendant replied, "I got like 270 on my books," and said that he was not currently employed. The court set defendant's bond at "20,000 10 percent." The court explained to defendant that he would need to post $2000 to be released from pretrial custody.

¶ 5        On May 8, 2017, defendant appeared before Judge Susan S. Tungate. At the beginning of the hearing, the State advised the court that it thought defendant was going to hire private counsel. Defendant responded "[n]o, I don't even want to hire counsel." Defendant then asked if he could pay any pending assessments and avoid any future court dates. The court explained to defendant that he had a pending criminal charge that was punishable by a sentence of imprisonment and, therefore, he could not stop attending the court sessions. The court said "[a]nd I would suggest you get an attorney if you can, unless you want to go to jail." Defendant told the court that he was not employed. The State noted that defendant had posted a $2000 cash bond, and this exchange occurred between the court and defendant.

> "THE COURT: Yeah, you can—you can use your bond to pay the attorney, if you want. You can assign it. So I'll give you another date to try to get somebody in here for you. Okay?
>
> THE DEFENDANT: I can't get a—a—
>
> THE COURT: Not with $2,000 posted. You have to have—

THE DEFENDANT: Wasn't my money.

THE COURT:—no funds.

THE DEFENDANT: Wasn't my money.

THE COURT: See if you can find an attorney.

[THE STATE]: Some attorneys will take part of your bond money to represent you. So you go into an attorney's office and tell them you have $2,000 cash bond posted—

THE DEFENDANT: All right.

[THE STATE]:—they would represent you for that. That's what she's saying. She can't appoint a public defender if you have money.

THE COURT: Or access to it, in this case.

THE CLERK: June 29.

THE COURT: June 29th. Try to get an attorney. Okay?

THE DEFENDANT: All right. Have a good day."

¶ 6        On June 29, 2017, defendant told the court that he tried to contact attorney Jim Burns. The court explained to defendant that Burns was a public defender. The State then mentioned that defendant had a "$2,000 cash bond." The court asked defendant "So you want to try to hire an attorney again?" Defendant responded "[y]eah." Before it continued the case, the court said "[a]ll right, I'm gonna give you a chance—one more chance to hire an attorney."

¶ 7        At the next hearing, on August 16, 2017, private attorney John Ridge entered an appearance on behalf of defendant. Counsel represented defendant through the remainder of the pretrial proceedings, bench trial, and sentencing hearing.

3

¶ 8        The trial evidence established that Kankakee police officer Jeff Krause found defendant sitting in the driver's seat of a running vehicle at 12:46 a.m. on May 3, 2017. Krause thought defendant was sleeping. Defendant told Krause that he was waiting for someone who was inside a nearby house. Defendant did not possess a driver's license. Defendant's driving abstract showed that defendant's driver's license was revoked at the time that Krause found him seated behind the steering wheel of the running vehicle. Defendant testified that he was sleeping in the car while he was waiting for his wife to come out of a nearby house. The car had a deep window tint, which made it impossible for an individual outside the car to see in. Defendant told Krause that he did not have a driver's license but said he was not driving the car. Defendant also said the car was not running. Defendant said that he had the key in the ignition so that he could listen to the radio.

¶ 9        The court found defendant guilty of driving on a revoked license. It sentenced defendant to 300 days in jail. Defendant filed a notice of appeal.

¶ 10                                    II. ANALYSIS

¶ 11        Defendant argues his conviction must be reversed and the cause remanded for further proceedings because the court refused to appoint counsel on the basis that a third party had posted bond on defendant's behalf. See *People v. MacTaggart*, 2019 IL App (3d) 160583. Defendant argues this error is reversible under the second prong of the plain error rule and is a structural error. We find that the court did not err because defendant did not persist in his demand for the appointment of counsel and retained private counsel before the need to make an indigency determination arose.

¶ 12        At the outset, we note that defendant did not file a posttrial motion and, thus, forfeited this issue. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Defendant seeks to avoid this forfeiture by asserting that the alleged error is structural and subject to reversal under the second prong of the

4

plain error doctrine. The plain error doctrine permits a reviewing court to consider a forfeited error when a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against defendant or (2) the error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007) (citing *Herron*, 215 Ill. 2d at 186-87). The first step in the plain error analysis is to determine whether a clear or obvious error occurred. *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 13        Defendant's claim of error derives from his constitutional right to the effective assistance of counsel. The sixth amendment of the United States Constitution and article I, section 8, of the Illinois Constitution entitle a criminal defendant to the assistance of counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. Section 113-3 of the Code of Criminal Procedure of 1963 further extends the right to counsel to all criminal cases except those where the penalty is only a fine. 725 ILCS 5/113-3 (West 2016); see also *People v. Campbell*, 224 Ill. 2d 80, 85 (2006). Subsection 113-3(b) requires a court to appoint the public defender to represent a defendant "if the court determines that the defendant is indigent and desires counsel." 725 ILCS 5/113-3(b) (West 2016). To qualify for the appointment of counsel, a defendant must first complete a financial affidavit describing his assets and liabilities. *Id.* The financial affidavit allows the court to determine if defendant is indigent. "A determination of indigency should be made after the court reviews a complete picture of the defendant's financial circumstances." *MacTaggart*, 2019 IL App (3d) 160583, ¶ 13. The court may not make an indigency determination without first conducting an inquiry into a defendant's ability to pay for private counsel. *Id.* ¶ 14. We review a court's indigency determination for an abuse of discretion. *People v. Abernathy*, 399 Ill. App. 3d 420, 427 (2010). We review *de novo* the issue of whether a defendant's right to counsel was denied. *Id.*

5

¶ 14       In this case, the pretrial proceedings never reached the point where defendant would be required to file a financial affidavit and the court would make an indigency determination. Early on, defendant expressed a desire to hire private counsel. At a subsequent hearing, defendant expressed a desire for appointed counsel. In light of defendant's vacillation, the court explained that he could still attempt to hire private counsel and could use his bond to pay counsel, via a bond assignment. The court asked defendant to try to get an attorney. Defendant indicated that he would try to hire private counsel, and the court continued the case. At the next hearing, defendant explained his first attempt to hire private counsel and reasserted his desire to retain private counsel. Three months after his first appearance, defendant appeared in court with privately retained counsel. Thus, the record established that the court did not refuse to appoint counsel because defendant did not persist in his desire for appointed counsel. Ultimately, defendant was not deprived of his constitutional right to counsel because private counsel represented him through the remainder of the pretrial, trial, and sentencing proceedings.

¶ 15       Defendant argues that our decision in *MacTaggart*, 2019 IL App (3d) 160583, directs the resolution of this case. In *MacTaggart*, defendant filed a financial affidavit, the court found defendant was indigent, and it appointed counsel to represent him. *Id.* ¶ 3. After a public defender entered an appearance on defendant's behalf, the State filed a motion to reconsider the appointment of the public defender. *Id.* ¶ 4. The public defender did not represent defendant at the hearing on the State's motion. *Id.* ¶ 5. At the conclusion of the hearing, the court found defendant was not indigent and discharged the public defender. *Id.* ¶ 6. When the court asked defendant how long he needed to obtain counsel, defendant replied he did not know because he had no funds to pay for counsel. *Id.* The court told defendant to inform a potential attorney that he had posted $25,000 in bond that was potentially available to pay attorney fees. *Id.* Defendant obtained private counsel,

who filed a motion for bond assignment. *Id.* On appeal, a divided panel of this court found the circuit court had failed to make a complete inquiry into defendant's financial circumstances and erroneously presumed from defendant's ability to secure money for his bond that he had sufficient " 'credit' " from his friends and family to pay for private counsel. *Id.* ¶ 16. The majority further found that, "[b]y precluding [defendant] the assistance of counsel at a hearing regarding his right to the assistance of counsel, [defendant] was deprived of his statutory right to any representation at the hearing." *Id.* ¶ 17. The majority noted "the court's determination that because [defendant's] bond was posted by his parents, he was no longer indigent was improper" and found the circuit court's discharge of the public defender violated defendant's right to counsel. *Id.* ¶¶ 19-20. The majority concluded this plain error was subject to reversal, as it "was structural and affected the integrity of the justice system." *Id.* ¶ 20.

¶ 16        While the instant case appears facially similar to *MacTaggart*—defendant posted bond, and the court declined to appoint counsel, citing the bond money as a means to pay for legal representation—the instant defendant was not prejudiced by the court's actions or deprived of his constitutional right to counsel. First, the court never appointed counsel to represent defendant because he had initially expressed a desire to hire counsel and subsequently reasserted that desire. Second, the court did not require defendant to represent himself during an adversarial hearing. Instead, defendant was represented by private counsel during the later pretrial stages, trial, and sentencing stage. Finally, despite the court's suggestion that defendant could retain private counsel by suggesting to potential attorneys that he had bond money to assign, private counsel did not file a motion for a bond assignment. This indicated that defendant was able to secure payment for counsel by means other than that recommended by the court and the State.

¶ 17 Finally, we note that neither party has cited any law requiring the court to conduct an indigency determination at the moment that defendant makes a request for appointed counsel. Such a requirement would be illogical at the earliest stage of proceedings, where a defendant is weighing both his financial ability to pay for representation and his choice of counsel. Given the facts of this case, the court reasonably employed a reserved approach that was largely guided by defendant's expressed desires. Defendant only asserted a desire for appointed counsel at the second hearing, and this desire contradicted his prior statement that he intended to hire private counsel. Importantly, the court did not expressly rule out the appointment of counsel but instead asked defendant to "[s]ee if you can find an attorney" and "[t]ry to get an attorney." The court also noted that defendant could "use [his] bond to pay the attorney, *if you want*." (Emphasis added.) Defendant appeared satisfied with the court's direction, and at the next hearing, he explained to the court his first unsuccessful attempt to hire private counsel. Defendant then indicated that he still intended to hire private counsel and voiced no further requests for appointed counsel. Therefore, defendant's request for appointed counsel during a single early hearing did not necessitate an immediate indigency hearing, and defendant abandoned that request when he successfully retained private counsel.

¶ 18                                   III. CONCLUSION

¶ 19       The judgment of the circuit court of Kankakee County is affirmed.

¶ 20       Affirmed.

**No. 3-18-0172**

| | |
|---|---|
| **Cite as:** | *People v. Moore*, 2020 IL App (3d) 180172 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 17-TR-4284; the Hon. Susan S. Tungate and the Hon. Thomas W. Cunnington, Judges, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Sean Conley, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |