2022 IL App (3d) 180493

Opinion filed January 18, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-18-0493 Circuit Nos. 16-DT-166, 16-TR-8883 and 16-TR-8884 |
| | ) | |
| MIGUEL MEDINA, | ) ) | Honorable Susan S. Tungate, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Hauptman concurred in the judgment and opinion.
Justice Lytton dissented, with opinion.

**OPINION**

¶ 1       Defendant, Miguel Medina, appeals his convictions for driving while under the influence of alcohol (DUI), driving while license revoked, and driving without insurance. First, defendant argues that defense counsel rendered ineffective assistance when he elicited harmful testimony at trial. Second, defendant contends that the Kankakee County circuit court violated defendant's constitutional right to counsel when it "refused to appoint counsel on the sole basis that a third party had posted bond on defendant's behalf." We affirm.

¶ 2                               I. BACKGROUND

¶ 3        On September 4, 2016, the State charged defendant with DUI (625 ILCS 5/11-501(a)(2) (West 2016)), driving while license revoked (*id.* § 6-303(a)), and driving without insurance (*id.* § 7-601(a)). On September 6, 2016, defendant appeared before the court for his bond hearing.

¶ 4        At the bond hearing, the court told defendant that it would determine whether defendant wanted to hire an attorney or if defendant qualified, the court could appoint the public defender. Then the court inquired into the status and nature of defendant's employment. Defendant indicated that he earned $1500 per month, supported one minor child, and was expecting another child. The court appointed the public defender and set defendant's bond at $50,000. The court instructed defendant that he needed to post $5000 to be released from custody. Defendant asked, "Can I hire a private lawyer?" The court indicated that defendant could hire a private attorney and that if he did so, the court would discharge the public defender.

¶ 5        On September 19, 2016, defendant appeared before the court out of custody. The court stated, "I'm going to discharge the Public Defender. You posted $5,000. You can get your own attorney. Okay? I'll give you time to do so."

¶ 6        On October 26, 2016, the court engaged in the following colloquy with defendant,

                "THE COURT: *** The PD was discharged because [defendant] posted a huge bond. ***

                Sir, you need to get an attorney. Have you hired one?"

                THE DEFENDANT: I can bring one *** by the next court date.

                THE COURT: Fine. We'll give you another court date, sir."

¶ 7        On December 8, 2016, defendant appeared in court with a private attorney. The matter proceeded to a jury trial on November 13, 2017.

2

¶ 8          At trial, Officer Michael Shreffler of the Kankakee Police Department testified that he received a dispatch on September 4, 2016, at approximately 12:30 a.m. An anonymous caller reported a disturbance at No Dogs Bar and indicated that a "male Hispanic" had left the bar in a silver Ford Taurus. Before reaching the bar, Shreffler observed a silver Ford Taurus "with a male Hispanic driver." Shreffler proceeded to stop defendant's vehicle. Shreffler observed that defendant spoke Spanish. Shreffler also noticed a strong odor of an alcoholic beverage emitting from defendant's breath and inside defendant's vehicle. Defendant indicated that he left a bar and had consumed three to four beers. Kankakee Police Officer Erik Villagomez arrived on the scene and conducted standardized field sobriety tests. Shreffler's squad dash camera recorded the tests. The court admitted the recording into evidence.

¶ 9          On cross-examination, defense counsel elicited testimony from Shreffler that the anonymous caller indicated that "a Hispanic male was drinking at No Dogs [Bar]" and "was being disorderly with another [individual]." The caller indicated that the Hispanic male "threatened to come back and shoot somebody." The report led Shreffler to believe that defendant possibly had a gun in his possession. While Villagomez conducted standardized field sobriety tests, Shreffler observed defendant sway and have trouble standing. Following defendant's arrest, officers did not recover a gun.

¶ 10         Villagomez testified that, on September 4, 2016, he responded to a call with a Spanish-speaking suspect. Upon arrival, Villagomez conducted standardized field sobriety tests in Spanish. During the tests, Villagomez observed the strong odor of an alcoholic beverage emanating from defendant, and defendant had watery eyes and slurred speech. Defendant told Villagomez that he had consumed two beers and "a couple shots" prior to being stopped. On the horizontal gaze nystagmus (HGN) test, defendant exhibited all six clues indicative of alcohol consumption. During

the walk and turn test, defendant stepped out of the starting position, completed an incorrect turn, failed to touch heel to toe on his returning nine steps, and raised his arms for balance. Finally, Villagomez instructed defendant on how to perform the one leg stand test. Defendant performed the test incorrectly, and Villagomez repeated the instruction three to four additional times. Defendant continued to perform the test incorrectly. Villagomez opined that defendant was under the influence of alcohol and unfit to drive a motor vehicle. After his arrest, defendant refused to submit to a breath test.

¶ 11    The squad video shows Villagomez conduct the HGN test, walk and turn test, and one leg stand test with defendant in Spanish. During the walk and turn test, defendant steps out of the starting position, raises his arms while walking, and completes an incorrect turn. During the one leg stand test, defendant raises his left leg above six inches and uses a kicking motion while bending his right leg up and down, lifts his arms for balance, and counts to 10.

¶ 12    The jury found defendant guilty of DUI, driving while license revoked, and driving without insurance. The court entered convictions on all three charges and sentenced defendant to 30 days in jail with 30 days credit for time served for the DUI offense.

¶ 13    On December 18, 2017, defense counsel filed a motion for a new trial. In the motion, defendant alleged that (1) the court refused to allow defense counsel to play the entire squad video entered into evidence by the State, (2) the court permitted the State to enter evidence that defendant possessed a gun but denied defendant the ability to cross-examine the witness that gave the information to police, and (3) the court erred by removing the jury from the courtroom twice during defense counsel's closing argument. The court denied defendant's motion. Defendant appeals.

4

¶ 14                                II. ANALYSIS

¶ 15                        A. Ineffective Assistance of Counsel

¶ 16         Defendant argues that defense counsel's elicitation of testimony from Shreffler regarding

defendant's threat to return to the bar and shoot someone and defendant's possible possession of a

gun amounted to ineffective assistance of counsel because this testimony made the jury more likely

to convict defendant. The State concedes that defense counsel's cross-examination constitutes

deficient performance, but it argues that defendant failed to show prejudice.

¶ 17         To establish ineffective assistance of counsel, a defendant must show (1) counsel's

performance fell below an objective standard of reasonableness and (2) a reasonable probability

that, but for counsel's error, the result of the proceedings would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 687-88, 694 (1984). "[W]e may dispose of an ineffective assistance of

counsel claim by proceeding directly to the prejudice prong without addressing counsel's

performance." *People v. Hale*, 2013 IL 113140, ¶ 17.

¶ 18         From our review of the record, we agree with the State's concession that defense counsel's

decision to elicit testimony that defendant indicated that he might return to the bar and shoot

someone and likely possessed a gun was deficient performance. However, we further find that

defendant has not and cannot show that he suffered prejudice as a result of this deficient

performance. That is, defendant does not argue how the elicited testimony would have changed

the result of the proceedings. The evidence that defendant committed a DUI was clear and

conclusive. To prove defendant guilty of DUI, the State needed to show that defendant drove or

was in actual physical control of a vehicle while under the influence of alcohol. See 625 ILCS

5/11-501(a)(2) (West 2016). "A person is under the influence of alcohol when, as a result of

drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his

5

ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000).

¶ 19 The evidence of defendant's consumption of an alcoholic beverage included two officers' detection of the odor of alcohol and defendant's admissions of having been in a bar and consuming several alcoholic beverages. Shreffler observed defendant driving his vehicle. After defendant exited his vehicle, defendant swayed and appeared unsteady on his feet. Additionally, Villagomez observed defendant's watery eyes, slurred speech, poor performance on standardized field sobriety tests, and refusal to complete a breath test. Shreffler's testimony about defendant returning to the bar to shoot someone and possessing a firearm did nothing to prove or disprove any of this affirmative evidence of defendant's guilt of DUI. Therefore, it did not alter the outcome of the trial. Accordingly, defendant has failed to demonstrate that he received ineffective assistance of counsel. See *Strickland*, 466 U.S. at 694.

¶ 20 B. Defendant's Constitutional Right to Counsel

¶ 21 Defendant contends that the court erred when it "refused to appoint counsel on the sole basis that a third party had posted bond on defendant's behalf," and therefore, violated defendant's constitutional right to counsel.

¶ 22 At the outset, we note that while defendant filed a posttrial motion, he did not allege that the court erred when it refused to appoint trial counsel. Thus, defendant forfeited this issue. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Defendant requests that we review the issue under the second prong of the plain-error doctrine. Specifically, he argues that the court's denial of his right to appointed counsel is a structural error, which requires automatic reversal under the second prong.

6

¶ 23    The plain error doctrine permits a reviewing court to consider a forfeited error when a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against defendant or (2) the error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). Our supreme court equated the second prong plain error review with structural error and asserted that " 'automatic reversal is only required where an error is deemed "structural," *i.e.*, a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' " *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010) (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009), quoting *Herron*, 215 Ill. 2d at 186). The first step in the plain error analysis is to determine whether a clear or obvious error occurred. *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 24    The sixth amendment of the United States Constitution and article I, section 8, of the Illinois Constitution entitle a criminal defendant to the assistance of counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. A court is required to appoint the public defender to represent a defendant "if the court determines that the defendant is indigent and desires counsel." 725 ILCS 5/113-3(b) (West 2016). We review *de novo* whether a court denied defendant's right to counsel. *People v. Moore*, 2020 IL App (3d) 180172, ¶ 13.

¶ 25    In the present case, at no point during the proceedings did defendant indicate that he could not afford a private attorney or request the appointment of the public defender. At the bond hearing, the court informed defendant that he could be eligible for the public defender. Then, unprompted by a request from defendant, the court inquired as to defendant's income and employment and appointed a public defender. Following the appointment, defendant asked if he could hire private counsel. On the next court date, when defendant appeared after posting bond, the court discharged

7

the public defender and gave defendant time to hire a private attorney. At that time, defendant did not request the public defender. On the following status date, defendant requested more time to hire a private attorney, which the court granted. Again, defendant did not request the public defender. We find from this record that the court did not err by "refus[ing] to appoint" the public defender because defendant did not request the public defender's representation. See *id.* ¶ 14; see also *People v. MacTaggart*, 2019 IL App (3d) 160583, ¶ 20 (the circuit court erred when it denied defendant the appointment of the public defender, despite defendant's request and an affidavit showing that he could not afford a private attorney). Simply put, there was nothing to refuse where defendant did not ask for appointed counsel. Moreover, the court did not deprive defendant of his constitutional right to counsel because, aside from a single status date, a private attorney represented defendant for the remainder of the proceedings. That is, contrary to the dissent's assertion, not only could defendant afford to hire private counsel, he did hire private counsel. Bottom line: no harm, no foul.

¶ 26                                    III. CONCLUSION

¶ 27        For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 28        Affirmed.

¶ 29        JUSTICE LYTTON, dissenting:

¶ 30        I respectfully dissent from the majority's finding that the court's dismissal of the public defender was not a reversible error.

¶ 31        Initially, I note that the Code of Criminal Procedure of 1963 requires the appointment of counsel "[i]n all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel." 725 ILCS 5/113-3(b) (West 2016). The appointment

should be based on an affidavit procured by the court and signed by defendant to "ascertain the assets and liabilities of that defendant." *Id.*

¶ 32　　　　Here, defendant's bond paperwork shows that an individual named Serafin Medina posted defendant's $5000 bond on September 10, 2016. As in this case, where bail bond is commonly posted by an individual other than defendant, the court wrongly presumed that the bond money was available to defendant. *People v. Wood*, 91 Ill. App. 3d 414, 419 (1980). Without acknowledging that an individual other than defendant posted defendant's bond, the court promptly discharged the public defender on the sole basis that defendant's bond had been posted. See *id.* (the posting of bail does not preclude a finding of indigency). The court had no right to dismiss defendant's public defender on this basis alone. See *id.* Thus, the court's decision that since defendant posted bond, he was no longer indigent was error.

¶ 33　　　　The error was compounded because it left defendant without the representation of an attorney. The court failed to comply with its duty and conduct any meaningful inquiry into defendant's assets and liabilities or require defendant to complete an affidavit to justify the dismissal of defendant's public defender. Not only did the court deprive defendant of the public defender's representation, but it failed to even offer defendant the option to request the public defender at any time following the discharge. The court forced defendant to choose between representing himself or hiring a private attorney, without consideration of the statutory requirements for the continued representation of the public defender.

¶ 34　　　　Money for private counsel may have come from the same source as the bond money. The circuit court and the majority speculate that defendant had unlimited resources, but no one knows. Although the majority cites that great legal principal "Bottom line: no harm, no foul" as support

9

for its position, I have yet to find a case to that effect. *Supra* ¶ 25. Rather, the guiding legal principal should be "follow the law."

¶ 35    I would further find that this plain error is reversible under the second prong because it is a structural error that affected the integrity of the judicial system. See *People v. MacTaggart*, 2019 IL App (3d) 160583, ¶ 20.

¶ 36    I would vacate defendant's convictions and reverse and remand for further proceedings.

## No. 3-18-0493

| | |
|---|---|
| **Cite as:** | *People v. Medina*, 2022 IL App (3d) 180493 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, Nos. 16-DT-166, 16-TR-8883, 16-TR-8884; the Hon. Susan S. Tungate, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Kelly M. Taylor, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |